## No. 8572.

### KNEPPER *v.* THE PEOPLE.

1. FALSE PRETENSES—*Obtaining the Promissory Note of Another,* by false representations is within Rev. Stat., sec. 1849. ·

2. *Information Construed.* The information charged that the accused falsely, etc., represented that the stock of a certain insurance company was worth $2.00 per share; that the company was paying quarterly dividends; that the amount required by statute had been deposited with the State; that the State had paid, and would continue to pay, quarterly dividends upon the stock; and that by reason of these representations, and her belief therein the prosecutrix executed and delivered to the accused her promissory note for $1,000. *Held* sufficient under Rev. Stat., sec 1849.

*Error to Denver District Court, Hon. W. S. Morris, Judge.*

Mr. C. A. IRWIN, for plaintiff in error.

Hon. FRED FARRAR, Attorney General, Mr. WENDELL STEPHENS, assistant Attorney General, Mr. RALPH E. KERWIN, assistant Attorney General, Mr. LESLIE E. HUBBARD, Attorney General, and Mr. JOHN L. SCHWEIGERT, assistant Attorney General, for the People.

Mr. Justice Bailey delivered the opinion of the court:

PLAINTIFF in error was found guilty of obtaining a promissory note of the value of $1,000.00 with intent to cheat and defraud by means of false pretenses. He brings the judgment here for review.

It appears that plaintiff in error was treasurer of an insurance company, in the process of formation, and that the note was given in payment for stock in the company. It was alleged that the shares were represented to be worth much more than the price asked; that the State was back of the company to the extent of $100,000.00, and was paying quarterly dividends on them, from money deposited by the company with the State. After the note had been paid the complaining witness discovered that the company had not deposited the statutory amount with the State, as represented or at all, and was not able, therefore, to write insurance, and that the company had never paid any dividends whatsoever.

Defendant below denied making the alleged or any false or fraudulent representations, and urged, among other defenses, that the information failed to set out any crime under the statute, and that the note given in payment for the shares was of no value in the hands of the maker, and was, therefore, not within the purview of sec. 1849, R. S. 1908, which enumerates the classes of property the obtaining of which by false pretenses is a crime. Defendant demurred to the information on these, among other grounds. The demurrer was overruled, and this ruling, with others, is assigned as error. None of the assignments merit attention except two based upon the demurrer, to-wit: First, that the information does not set out, allege or show that the prosecuting witness was defrauded; and second, that the note in the hands of the maker was of no value, and therefore the securing of it by false pretenses constitutes no crime.

In regard to the objection to the information, that it failed to set forth the fact that complaining witness had been defrauded, it is clear that in the information the defendant is charged with feloniously, fraudulently, falsely

and knowingly pretending and representing that the stock in question was worth at least two dollars a share; that the company was paying quarterly dividends; that the amount required by statute to be deposited with the State had been so deposited; that the State had paid and would continue to pay quarterly dividends upon complainant's stock, and was backing the company to the extent of $100,-000.00, and further, that by reason of the representations, and her belief in them, she made, executed and delivered her promissory note for $1,000.00, and that these representations were known by defendant to be false. This was the gist of the offense charged. Sec. 1950, R. S. 1908 in reference to indictment applies also to informations, and is as follows:

"Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the code, or so plainly that the nature of the offense may be easily understood by the jury."

Under this section it is plain that the offense was sufficiently set out in the case at bar to make the nature of it clear to all. It definitely charges the crime set forth in sec. 1849, R. S. 1908, if the promissory note may be held to be a thing of value within the meaning of this provision. The section so far as applicable, is in the following words:

"If any person shall knowingly and designedly, by any false pretense or pretenses, obtain from any other person or persons any chose in action, money, goods, wares, chattels, effects, or other valuable thing whatever, with intent to defraud any such person or persons of the same, every person so offending shall be deemed a cheat. *    *    *"

It is vigorously urged by counsel for defendant that defendant cannot be convicted under this statute, because the note in question was without value in the hands of the prosecutrix. A number of cases are cited, chiefly English cases, in support of this contention. The better rule, however, seems to be the one laid down in 11 R. C. L. 490:

"The statutes usually add the words 'or other property', 'or other valuable thing', or 'or other valuable effects'.

Literally, of course, these terms are broad enough to include a promissory note or bill of exchange; hence, unless the court is convinced by the association of such words with others that they are used to express some more limited conception, there is ample justification for applying them to the full extent of their literal meaning. Some courts have declared that the intention of the legislature was obviously to include all things which might be the subject of larceny, and hence that the words 'or other property' must be viewed as an intended addition to the more specific designation of the property preceding them. There are cogent reasons for saying that such articles of property as are now under consideration are as likely to be obtained by misrepresentation as any other forms of personal property, and that injury to the defrauded person, and perhaps others, is, if anything, more imminent than in the case of tangible chattels. From consideration such as these, the courts have concluded that the true intention of the legislature will be best given effect by holding that a promissory note is within the meaning of the words 'or other property.' "

This principle was applied in a case involving the fraudulently obtaining of a signature upon a promissory note, under a statute relative to obtaining by false pretenses "money, goods, chattels, or other effects," in *People v. Stone,* 9 Wend. 181. The court, at page 191, said:

"That a note obtained by false pretenses and with fraudulent intent, and which the party has actually used for his own benefit, is embraced within the spirit of the act as it stood before the revised statutes, I have no doubt. The words, 'other effects,' as used in this act, it is obvious, when the connection in which they stand is taken into consideration, were designed to be most comprehensive. They were probably intended to embrace everything of a personal character not appropriately and strictly falling under the description of money or goods or chattels. I consider them equivalent to the words 'or other valuable thing whatsoever' of the British act."

In *State v. Thatcher,* 35 N. J. L. 453, where an infor-

mation was founded upon a similar state of facts the court held:

"Is the maker's own note or contract of suretyship a valuable thing? The signing of the name was an act, the name, when signed, was a thing. Was it a thing of any value? While it remained locked up in his secretary it was of no value to the maker, but *eo instanti* it passed out of his hands by the fraud it became impressed with the qualities of commercial paper and possessed to him the value which it might cost to redeem it from a *bona fide* holder. * * * Can it, therefore, be said that a paper which imposed such a risk was of no value to the maker? Its value to him consisted not in what it would put in his pocket if he retained it, but in what might be taken out of his purse by the delivery of it to the defendant."

A note in the hands of the maker was held to be a "valuable thing", and fraudulently obtaining it punishable, in *State v. Porter*, 75 Mo. 171. The court, at page 177, said:

"The note obtained was in form a non-negotiable promissory note, and while open to any defense the maker might have against it in the hands of any one holding it by endorsement or otherwise, was still of some value as a promissory note. Contingencies might have occurred which would have enabled the holder, even the accused, to collect the amount. If the maker had died leaving the note outstanding, it would have been impossible to prove the fraud by which it was obtained."

The above case was cited with approval in *State v. Vanderburg*, 159 Mo. 230, 60 S. W. 79.

In Wisconsin the question as to whether a note in the hands of the maker was such property as would make the obtaining it by false pretenses punishable was determined in *Clawson v. State*, 129 Wis. 650, 109 N. W. 78, 116 Am. St. 972, 9 Ann. Cas. 966. The court said:

"At the very threshhold of this case we are confronted by a very important and doubtful question of law, affecting the general scope of the criminal law of this state, on which we have received no aid from counsel on either side,

and upon which the field of at least suggested decisions is quite extended and has involved us in much labor and research. That question is whether our statute (section 4423, Stat. 1898) makes criminal the obtaining by false pretenses a promissory note or other evidence of indebtedness. Our statute, adopted originally from Massachusetts, makes criminal only the obtaining of 'money, goods, wares, merchandise, or other property.' The Massachusetts statute was substantially an adoption of the English acts of 30 Geo. II., cap. 24, and 52 Geo. III., cap. 64. Since the respective adoptions the statutes have been modified both in England and Massachusetts by an addition to the list of property which might be the subject of the crime, of apt words to describe evidence of indebtedness, and in the overwhelming majority of other states the statutes defining the crime of false pretenses either nominate expressly 'evidence of indebtedness' or do not, like ours, contain such a category of tangible material property as to suggest, by *noscitur a sociis,* a limitation of the final general words to similarity to such a preceding category. We have been unable to find, either in England or in Massachusetts, a decision whether evidences of debt might be the subject of obtaining goods under false pretenses during the period that their statute failed to cover them specifically. * * * In other states, where the statutes do not by clear expression include bills and notes, the decisions are in favor of their inclusion under such expressions as 'other property,' or 'other valuable thing', or 'valuable effects'. * * * The rule *noscitur a sociis* is of course only a rule of construction, although among those most frequently applied, and perhaps most in accord with the real fact as to attempts to express in words those things as to which it was intended to legislate. If, however, the court is convinced that a general *et caetera* expression is appended to a list of specific designations with the intent to broaden the same, it is, of course, its duty to give such words that effect. 'Other property', literally is, of course, broad enough to include a promissory note or bill of exchange; hence, unless a court is convinced by the association of such words with others

that they are used to express some more limited conception, there is ample justification for applying them to the full extent of their literal meaning. Doubtless there is cogent argument that such articles of property as those now under consideration are as likely to be obtained by misrepresentations as any other form of personal property, and that the injury to be done the defrauded person, and perhaps others, is, if anything, more imminent than in the case of tangible chattels. From considerations such as these * * * the court has concluded that the true intention of the legislature will be best given effect by holding that a promissory note is within the meaning of the words 'of other property.' "

It seems that this rule prevails in most jurisdictions where local statutes fail to specifically include such notes. 9 Am. & Eng. Cas., Note 970.

In *People v. Reed,* 70 Cal. 529, 11 Pac. 676, a promissory note was obtained from the maker by false pretenses, and in discussing the terms "other property", "other valuable thing", and "valuable effects", the court said:

"It is further contended by the defendant that the promissory note, as proven, was not such property as would support the indictment. At common law, the only description of property which could be the subject of larceny was personal goods; that is, mere movables having an intrinsic value. The crime could not be committed of things which savor of the realty, or of written instruments of any description. 4 Bl. Comm. 229, 234; 2 Russ. Cr. 62, 70. The paper only on which an instrument was written, and not the instrument, was the subject of larceny. This phase of the common law is modified by our Penal Code, section seven of which provides that the term personal property 'includes money, goods, chattels, things in action and evidences of debt.' "

Under our statutes the term "personal property" is defined in sec. 5540, R. S. 1908, as follows:

"The term 'personal property' includes everything which is the subject of ownership, whether tangible or intangible, and not included within the term 'real estate.'

The above definition is far more comprehensive than

that quoted in *People v. Reed, supra.* A promissory note, being subject to ownership, is, under this statutory definition, personal property even in the hands of the maker, and so is within the purview of sec. 1849, R. S. 1908.

In this country the contrary opinion is based upon English cases determined before the passage of the English act specifically including notes in the hands of the makers. Section 1849, *supra,* of our statutes, includes "choses in action  *  *  * chattels, effects, or any other valuable thing," the procuring of which by false pretenses with fraudulent intent shall constitute a crime. The statute does not specifically require that any of these enumerated classes of personal property shall have value in the hands of the person swindled. If, the instant they are reduced to possession by the swindler they have value, that meets the requirements of the statute. This interpretation is not only supported by abundant authority, but is one which appeals to the reason, judgment and common sense of all.

Counsel for plaintiff in error argues for a reversal of the judgment mainly on the erroneous assumption that the controlling question is whether inducing one by fraudulent pretenses and false representations to execute a written instrument is an offense under the statute. The statute does not purport to create such an offense, and no such offense is charged in the information. What is charged is that the defendant by false, fraudulent and felonious pretenses and representations secured the note in question, and the inquiry is whether, under the statute upon which the information is based, such note is a thing of value within the meaning of the statute. That it is such, both on principle and authority, is abundantly established.

The verdict fixed the value of the note at $1,000.00. There was competent testimony to support such verdict. Indeed, upon the record we are of opinion, there being no contrary showing, such testimony was not only sufficient, but conclusive.

Judgment affirmed.

Decision *en banc.*

Garrigues, J. dissenting.

I cannot agree with the majority opinion. The information charges that defendant by false pretenses induced the prosecuting witness to make; that is, sign, execute and deliver to him, her promissory note in the principal sum of $1,000.00 of the value of $1,000.00 of the personal property of the prosecuting witness. The people's evidence showed that defendant obtained the signature of the prosecuting witness to her promissory note in the sum of $1,000.00 which, after she signed it, was delivered by the maker to the defendant and that the note was subsequently paid. This is the only evidence of value. Can the conviction be sustained under our statute, which provides:

"If any person or persons shall knowingly, and designedly by any false pretense or pretenses, obtain from another person or persons any chose in action, money, goods, wares, chattels, effects or other valuable thing whatever, with intent to cheat or defraud any such person or persons of the same, every person so offending shall be deemed a cheat, and upon conviction", punished as provided by statute. R. S. 1908, sec. 1849.

The note which the prosecuting witness was by false pretenses procured to sign, was not a valuable thing before delivery or until delivered. Of course a promissory note is a chose in action and one may be convicted under the statute for obtaining a note by false pretenses, or convicted of larceny for stealing it, but in either case it relates to some subsisting note in the possession of the prosecuting witness and not merely to the obtaining of a signature to a note. Had defendant obtained, by false pretenses from the prosecuting witness a subsisting note, then in her possession, it would come within the statute; but the note in question before delivery, while still in the possession of the maker, was not a chose in action. This defect in the statute has been corrected in England and in many of the states of the Union, by including in it the obtaining a signature to an instrument. We have no such statute and until we do, I do not think the conviction can be sustained. Moreover, there is no description of the note in the information and there was no proof of value except the prosecuting witness said she paid the note at maturity.