## No. 10,087.

### MILLER v. THE PEOPLE.

Decided July 5, 1921. Petition for rehearing withdrawn October 3, 1921.

Plaintiff in error was convicted of an attempt to rob a mail car.

### *Reversed.*

### *On Application for Supersedeas.*

1. EVIDENCE—*Dictagraph.* The competency of evidence secured by means of a dictagraph and stenographers, doubtful in this case, where the evidence thus procured is held not to establish the guilt of defendant.

2. TRIAL—*District Attorney—Improper Conduct of.* Where the guilt of an accused is evident, improper action on the part of the

prosecuting officer may be overlooked; but where the case is close, conduct on the part of the district attorney which might reasonably be expected to prejudice the jury will be treated as ground for reversal.

*Error to the District Court of the City and County of Denver, Hon. Francis E. Bouck, Judge.*

Mr. L. J. STARK, for plaintiff in error.

Mr. VICTOR E. KEYES, Attorney General, Mr. CHARLES R. CONLEE, Assistant, for the people.

*Department One.*

MR. JUSTICE TELLER delivered the opinion of the court.

THE plaintiff in error, hereinafter designated as the defendant, was convicted of an attempt to rob a mail car on the Union Pacific Railroad at Sandown, about six miles east of Denver. The attempted robbery occurred a little after nine o'clock P. M. on November 16, 1920. The train was stopped at the station named, and when the engineer descended from his cab he was confronted by a man with a revolver who immediately ordered him to put up his hands. Another man, who kept some distance away from the engine, was implicated in the hold-up. The first man mentioned was wounded by a shot fired by one of the brakemen, and one John Lane or Lame, was afterwards arrested, and identified by the brakeman as the man who held up the engineer.

Lame also was charged with said offense, but died before his trial.

After their arrest the accused were placed in adjacent cells, between which a dictagraph had been installed. Stenographers were stationed at a convenient point to hear, through this instrument, what passed between the two prisoners. The case made against the defendant seems to rest very largely upon a conversation reported to have been heard through said instrument. It appears from the record that while the dictagraph was in use, and the ste-

nographers listening to hear and take down what passed between the prisoners, one or the other of the prisoners was several times taken from his cell. It nowhere appears in the testimony of these stenographers that they were familiar with the voices of the prisoners, or that they knew of their own knowledge, at the time the reported remarks were made, that they were made by either of the prisoners. The competency of this evidence, therefore, was, at best, very doubtful, and it is far from establishing the guilt of defendant.

The testimony of an experienced physician, who examined Lame, was to the effect that the shot had penetrated his brain, so that he was unable, at least at times, to respond intelligently to questions propounded to him. Any conversation with him, would, therefore, be of little probative value. There is no evidence directly connecting the defendant with the offense; and the matters upon which the state relies to support the conviction, when considered as a whole, do little more than raise a suspicion against him. Under such circumstances it was vitally important that the case be presented to the jurors fairly, and without any attempt to mislead them.

The defendant's attorney, appointed by the court to defend him, but who does not represent him here made no argument to the jury, and left the jurors with no help in the analysis of the testimony, and without any suggestion as to what ought to be their reasonable conclusion from the facts in evidence. His short statement to the jury that the facts were before them was regarded by the court as sufficient to entitle counsel for the state to make a second argument to the jury; and he made such argument.

The evidence disclosed that the defendant was working, at the time of his arrest, and had been so working for a few days prior thereto, on the farm of one Schneider, some sixteen miles north of Denver. Mr. Schneider testified that on the night of the attempted robbery the defendant came home at about ten o'clock. Had the jury believed

this evidence the defendant must have been acquitted. That being so, the persistent attempt of the state, without any apparent cause, to discredit Schneider, and to suggest reasons why he would testify falsely, did not comport with the proper discharge of the duties of the office of the district attorney.

Counsel for the state in his argument to the jury made the following statement:

"Now what is Schneider's object in this case? The two men come from the same race—German or German descent. Miller was a friend of the family, came out there and visited for months  *  *  *  Did Miller work there long? No, he came and flitted away. The evidence disclosed that Schneider had daughters, grown daughters; that they were in relationship together socially, visiting and playing cards."

Objection was made to this language, and the court instructed counsel to go no further on that line. Even though a jury be warned to disregard remarks of that kind, when once made the remarks have done the injury. It is idle to suppose that an instruction to disregard them will wholly remove their effect. The statement was not supported by the evidence, was highly improper, and clearly prejudicial to the defendant. There was no evidence that either Schneider or Miller was a German, or of German descent; they were Swiss. The fact that a native of Switzerland speaks the German language is no evidence that he is of German origin. It is common knowledge that many persons now entertain a strong prejudice against people of the German race.

There is no evidence that Miller was a friend of the family, or that he ever visited there for months, or, at the most, for more than a day or two, and that but recently. There was evidence that Schneider had daughters, one of whom (a girl fourteen years of age) testified, but there is no evidence that Miller ever saw the elder daughter. The attempt plainly was to break down the testimony of

Schneider by leading the jury to believe that Miller's relations to the family were such as might influence Schneider to color his testimony, or misstate the facts. The only evidence as to Miller's relations to the family in a social way was that a few nights before his arrest Schneider, his wife, Miller and the other hired man played cards in the Schneider kitchen. The testimony of the Schneiders is clear, and without anything to suggest that they were doing anything other than attempting to tell the facts as they recalled them; that being so the course of the district attorney was without excuse, and a clear violation of his duty.

There are other incidents in the trial from which it appears that counsel for the state regarded his position as that of a partisan attorney, justified in excluding evidence of matters favorable to the defendant, and in putting in everything which could, by any possibility, reflect upon him. While a prosecuting attorney is justified in bringing out all the facts which tend to establish the guilt of the accused, he has no right to misrepresent facts, or create false impressions in the minds of the jurors. This court has several times had occasion to call the attention of district attorneys to the fact that they represent the people, and should endeavor to see, not that an accused person is convicted, whether or no, but that the facts are fully and fairly placed before the jury. Cases on this question are collected in *Hillen v. The People,* 59 Colo. 280, 284, 149 Pac. 250. It seems that this warning must be constantly repeated, that such officers may not in their zeal for success go beyond their line of duty.

The rule is that where the guilt of an accused is evident, improper action upon the part of the prosecuting officer may be overlooked; but where the case is close, as it is here, conduct upon the part of the district attorney which might reasonably be expected to prejudice the jury, will be treated as ground for reversal.

It is highly probable that some juror, hearing this state-

ment of the assistant district attorney as to Schneider, there being no answering argument in behalf of the defendant, was moved to conclude that the defendant was guilty of the crime charged.

For the reasons above stated the judgment is reversed.

MR. JUSTICE BAILEY, sitting for MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE ALLEN, concur.