No. 14,837.

LEWIS ET AL. *v.* THE PEOPLE.

(123 P. [2d] 398)

Decided February 2, 1942.   Rehearing denied March 9, 1942.

Mr. A. W. McHENDRIE, Mr. HORACE N. HAWKINS, SR., Mr. WILLIAM T. BURRIS, for plaintiffs in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

THIS case is before us for the second time. Because of certain prejudicial errors occurring in the first trial, we reversed the judgment then entered. See, *Lewis v. People,* 99 Colo. 102, 60 P. (2d) 1089. The facts are fully set forth in our former opinion and we therefore deem it unnecessary to repeat them in their entirety. On the second trial, as on the first, defendants were found guilty of the charge of embezzlement and are here again seeking reversal upon numerous assignments of error. Such of these as require our consideration may be summarized as follows: (1) Refusal of the court to remand the case for trial to Pueblo county; (2) overruling the motion of defendants for a separate trial; (3) overruling defendants' demurrer to the information; (4) variance between the offense charged and the proof; (5) exclusion of evidence offered by defendants; (6) error in the

92

refusal to give defendants' tendered instructions, and in the giving of certain instructions by the court; (7) misconduct of the district attorney.

■ 1. The granting or refusal of a motion to change the place of trial is a matter left to the sound discretion of the trial court, and in the absence of a showing of abuse of that discretion its order will not be disturbed on review. *Hopkins v. People,* 89 Colo. 296, 298, 1 P. (2d) 937. After a consideration of all the applicable evidence, we conclude that the court did not abuse its discretion in denying the motion in the instant case.

■■ 2. Each defendant made a motion for separate trial, based upon section 484, chapter 48, '35 C.S.A. The motions were overruled. Counsel for defendants contend that evidence was admitted on the trial which brought the case within the prohibitions contained in section 484, supra. It is conceded that prejudicial error would not have resulted if no such prohibited testimony had been received. See, *Stone v. People,* 71 Colo. 162, 204 Pac. 897; *Sarno v. People,* 74 Colo. 528, 223 Pac. 41.

We proceed to a consideration of the evidence which, it is urged, was prohibited under section 484. The particular testimony of which complaint is made is, first, that of Witness Mascentonio, a stockholder of the Railway Savings & Building Association, who, on June 14, 1930, talked to defendant Westcott concerning the purchase of more association stock. He asked her if anyone was receiving commissions, and she answered in the negative. He then inquired how much salary she was receiving, to which she replied $250, and that Lewis was getting $300, presumably monthly. This, it is contended, was not admissible as against defendant Lewis. Second, the evidence of Witness Klasgye, employed by the association as a stenographer for approximately thirteen years, who testified to various acts on her part as such employee, under the direction of defendant Westcott. This, it also is contended, was not admissible as against defendant Lewis. In passing upon the admissi-

bility of this evidence we must take into consideration its purport and the facts and circumstances surrounding the offense charged. Defendants Lewis and Westcott, together with another defendant, now deceased, as officers of the association and members of the board of directors, determined its policy and, as such officials, had the care and control of all the funds, including disbursements. In order to show intent and to give the jury a complete picture of the operations of the association, evidence of all acts performed in the usual course of its business was admissible and binding upon each of the defendants. This is especially true where, as here, the evidence disclosed the development and consummation of a concerted plan to obtain the funds of the association under the guise of commissions, in which all of the defendants participated equally. While it is true that the information did not charge a conspiracy, nevertheless, where it appears that there is concerted action between codefendants, evidence of the acts and declarations of one, in furtherance of the common design or plan, is admissible against the other defendants. 16 C.J., p. 647, §1284, 22 C.J.S., p. 1292, §756; *Van Wyk v. People,* 45 Colo. 1, 99 Pac. 1009; *Kolkman v. People,* 89 Colo. 8, 300 Pac. 575. The evidence of the witness Klasgye, and similar evidence, clearly was admissible against both defendants. The evidence of witness Mascentonio, while not similar, was likewise admissible, because, in accordance with the plan, one of the factors was concealment, and the evidence to which objection was made was material as showing intent. Here was a stockholder asking an officer of the association for information which he was entitled to receive, viz., if anybody was receiving commissions. At that very time all three defendants were receiving large amounts in commissions, and the information imparted, that only very reasonable salaries were being paid, tended to support the concerted plan to continue to take association funds. A disclosure of the true situation would have been disastrous to the en-

tire plan in which they were concertedly acting. The evidence of which counsel for defendants complain was not within the prohibitions of said section 484; hence, the overruling of the motion for separate trials did not constitute prejudicial error; moreover, the argument of counsel for defendants in support of this motion, that the receiving and cashing of three separate checks in the distribution of the funds involved required separate trials, is without merit.

3. Counsel for defendants further contend that the trial court erred in overruling their demurrer to the information which, they urge, is insufficient in that it does not charge defendants with the commission of any offense against the laws of this state, by reason of the fact that it does not state that the sum which defendants are alleged to have embezzled came "into their possession by virtue of their office" as officers of the Railway Savings & Building Association. The information is based upon section 99, chapter 48, '35 C.S.A., which, inter alia, provides: "If any officer, agent, clerk or servant of any incorporated company, or if any clerk, agent, servant or apprentice of any person or copartnership or association * * * embezzles or fraudulently converts to his own use, or takes, and secretes with intent to embezzle or convert to his own use, without the consent of his company * * * any money, goods or property of such company * * * or which is partly the money, goods or property of such company * * * and partly the property of such officer, agent, clerk, servant * * * *which has come into his possession or under his care in any manner whatsoever,* he shall be deemed guilty of larceny and punished accordingly." It will be noted that the phrase "into their possession by virtue of their office" does not appear in the above section. The information which, as stated, is predicated upon that section, charges, inter alia, as follows: That the defendants "were then and there officers and employees, to-wit, Thomas L. Lewis, President; Miles G. Saunders, Vice-President; and

Ethel L. Westcott, Secretary and Treasurer; of The Railway Savings and Building Association, a corporation; *and that as such officers and employees * * * did then and there have in their possession and under their care and control,* fifteen thousand, three hundred twenty-nine and 21/100 dollars ($15,329.21) in money, * * * of the personal property, goods, chattels and moneys of the said The Railway Savings and Building Association, a corporation; and that said personal property, goods, chattels and moneys were then and there the subject of larceny; and, *that while said moneys were so in the possession and under the care and control* of the said Thomas L. Lewis, Miles G. Saunders, and Ethel L. Westcott, the said Thomas L. Lewis, Miles G. Saunders, and Ethel L. Westcott did then and there, without the consent of their said employer, The Railway Savings and Building Association, a corporation, unlawfully, fraudulently, and feloniously embezzle and convert to their own use, * * * with intent then and there to steal the same;" It thus clearly appears that the allegations of the information follow the language of section 99, supra, and this we have held in a number of cases to be sufficient to satisfy constitutional requirements. See, *Schneider v. People,* 30 Colo. 493, 71 Pac. 369; *Knepper v. People,* 63 Colo. 396, 167 Pac. 779; *Balfe v. People,* 66 Colo. 94, 179 Pac. 137. Moreover, the allegations: "That as such officers and employees * * * [the defendants] did then and there have in their possession and under their care and control," the money in question; and "that while said moneys were so in the possession and under the care and control of the said" defendants, are, in our opinion, under the section here involved, equivalent to the phrase, came "into their possession by virtue of their office," and that the offense charged is set forth with such degree of certainty that the court could lawfully pronounce judgment upon the conviction according to the right of the case. '35 C.S.A., c. 48, §457. Counsel for defendants, to sustain their contention, strongly rely

upon the cases of *Phenneger v. People,* 85 Colo. 442, 276 Pac. 983, and *Wright v. People,* 104 Colo. 335, 91 P. (2d) 499. In neither of these was the sufficiency of the information questioned, and in the Wright case, unlike here, the information was predicated upon section 262, chapter 48, '35 C.S.A., which contains such a phrase. They also cite cases from other jurisdictions which seem to sustain their contention, but an examination discloses that they involve statutory provisions very different in language from those contained in our section 99.

Counsel for defendants, in this phase of their argument, because of the absence from the information of the phrase in question, also urge that the court committed error in giving instruction No. 4, which reads as follows: "The burden of proof is upon the people to prove each and every material allegation contained in the information, to your satisfaction beyond a reasonable doubt, and if you find from the evidence that the people have failed to so prove any one or more of the material allegations in the information, you will find the defendants not guilty. Upon the other hand, if you find from the evidence that each and every material allegation in the information has been proven beyond a reasonable doubt, you will find the defendants guilty." As already stated, every material allegation was contained in the information, which was presented to the jury by instruction No. 1; and by instruction No. 7 the jury was advised as to all the elements necessary to prove embezzlement as laid down in the Phenneger case. Notwithstanding no objections were made by defendants to instructions numbered 1, 4 and 7, we consider this question as raised to be without merit. The court rightly overruled the demurrer.

■ 4. Counsel for defendants earnestly contend that there was a variance between the offense charged and the proof, in that, if the evidence shows the commission of any crime, it is that of larceny and not statutory embezzlement, because the testimony discloses that the

intent to convert was formed prior to the time defendants received into their possession the money alleged to have been embezzled. The intent to convert was formed in 1929, when the first monthly peculation occurred under a concerted plan to deposit the monthly commissions in a special account at the First National Bank, and they continued monthly thereafter until the filing of this information. The particular wrongful appropriation here involved was such a monthly deposit of commissions which had lawfully come into the possession of defendants in February, 1931. Under the presented circumstances, there can be no question that the evidence indicates that the intent to convert was formed prior to that time. Whether under these circumstances it is necessary, in order to obtain a conviction for embezzlement, to show that the element of intent to convert was formed after the money came into the possession of defendants is another question. It is absolutely necessary that such intent be proven to exist at the time of the conversion for personal use. That it is essential in proving embezzlement that the intent was formed after obtaining the possession and not before, is not stated in the Phenneger case as one of the necessary elements of proof, which has been exhaustively discussed in the briefs before us. In the case of *Moody v. People*, 65 Colo. 339, 176 Pac. 476, we find the following statement concerning the distinction between larceny and embezzlement: "Embezzlement is common-law larceny extended by statute to cover cases where the stolen property comes originally into the possession of the defendant without a trespass. The word implies a fraudulent or unlawful intent. One can not honestly embezzle any more than he can honestly steal. It differs from common-law larceny only in the fact that there is no trespass in the original taking, but it is stealing. It includes all cases where one entrusts the care of his property to another, as his agent, who fraudulently appropriates it to his own use, or fraudulently misapplies

it. . It. is made to. cover a .class and kind of larceny where the property stolen comes into the hands of the. defendant originally with the owner's consent, * * *."

In the instant case there was no trespass in the original taking. The money lawfully came into the possession of defendants as the agents of the association. This primary element of trespass in common-law larceny is absent; moreover, this is a case where the association, under fiduciary relations, entrusted the care of the funds here involved to defendants as its agents; in other words, the funds reached the hands of its agents with the consent of the association.

It is true that in a number of cases in which a fraudulent intent existed at the time of the receiving of the property, and the subsequent conversion thereof, the taking was, under the circumstances involved, held to be larceny and not embezzlement. This primarily is true where the offense involved was larceny. Here the offense charged is embezzlement. The chief distinction made in practically all cases is that in embezzlement, the property comes lawfully into the possession of the taker and is fraudulently or unlawfully appropriated by him, while in larceny there is a trespass in the unlawful taking of the property. 18 Am. Jur., p. 573. Where a bailee, under a contract of bailment, fraudulently obtains the possession of property with a felonious intent existing at the time, the taking has been held to be larceny. Here, however, no bailment is involved. "It has been held * * * that where money has been voluntarily delivered to accused as agent, the fact that he formed the intent to appropriate it at or before the time he received it does not prevent a prosecution for embezzlement, although the offense may also constitute larceny." 20 C.J., p. 412, 29 C.J.S., p. 672, §4.

This question of variance was raised by counsel for defendants in their motion for a directed verdict, which the court rightly denied.

5. The next ground relates to the exclusion of

testimony offered by defendants. The primary complaint is that the excluded evidence tended to show the good faith of defendants and the absence of an unlawful intent. Westcott was asked about conversations she had with the auditor, objections to which were sustained. Questions were propounded to the auditor concerning his conversations with the head of the building and loan department of the state, objections to which also were sustained. The record discloses that the testimony of this state official was available if the defense had desired to introduce it. The defendants also attempted to show by the auditor, who was familiar with other building and loan associations in Colorado, that it was common practice for such officers and directors to take commissions on sales of stock. This clearly was a collateral issue and the proffered evidence was not material. Objections to most of the testimony offered, and which the court sustained, were made on the grounds that it was hearsay and selfserving, and that there was a failure to lay a proper foundation. A careful consideration of all this offered testimony leads us to the conclusion that its exclusion did not constitute prejudicial error; moreover, the record discloses that so far as the special account in the First National Bank is concerned, about which there was much controversy, the witnesses testifying thereto and concerning other matters, were subjected to exhaustive cross-examination by counsel for defendants, and they were permitted to fully explain their position in all respects, particularly as to the existence of the special account.

6. Counsel for defendants did not object to the instructions given by the court except No. 18. We therefore consider only the error assigned on this instruction, except as others, of which complaint is made, bear some relation to the refusal of tendered instructions. This eliminates consideration of any alleged error based on the giving of instructions numbered 5, 6, and 19, none of which is so prejudicial to the rights of defendants as

to require us to make an exception to the general rule on our own motion.

Defendants' tendered instruction No. 11, which the court refused to give, reads as follows: "The court instructs the jury that if you can reconcile the evidence introduced before you upon any reasonable hypothesis with a defendant's innocence, you should do so, and in that case find him or her not guilty." The court incorporated this request substantially in its instruction No. 19, whereby it told the jury: "You are further instructed that if you find from all the evidence in the case that the acts and conduct on the part of the defendants in appropriating the money with which they are charged as having embezzled are consistent with a criminal intent and inconsistent with any reasonable hypothesis of good faith on the part of defendants, then it will be your duty to return a verdict of guilty. If on the other hand you believe that such acts and conduct are consistent with the good faith of defendants, or if there exists a reasonable doubt as to their good faith or intent, then your verdicts should be not guilty."

As already stated, no objections were made to the giving of instruction No. 19, and while we do not approve its form, we suggest that tendered instruction No. 11 is objectionable because it is an incomplete statement of the principle involved. In view of the giving of instruction No. 19, the refusal to give defendants' tendered instruction No. 11 was not prejudicial error.

Instruction No. 18 as given by the court reads as follows: "The court instructs the jury that if you find from the evidence that the defendant Ethel L. Westcott, in the year 1909 or 1910 heard S. D. Trimble, attorney for the Railway Savings and Building Association, advise the defendant Thomas L. Lewis that if said Lewis would remain with the association he, the said Lewis, would be entitled to take and receive a commission on stock sold by the association, including an overriding commission on stock sold by other agents; and further

that she, the said Ethel L. Westcott, knew that down to and including February 25, 1931, the date mentioned in the information in this cause, that the said Lewis had been receiving such commissions during all the time of his service as an officer of the association, and that during all of that time she knew that the officers and directors were fully advised of the taking of said commissions, and never heard any claim on the part of any director or officer of the association, that the said Lewis was not entitled to such commissions, and that she honestly and in good faith, in February and March, 1931, believed in and relied upon the said advice of the said attorney for the association, and in good faith believed that the defendant Lewis was entitled to receive such commissions and had the right to divide said commissions with her as he pleased, then as to said defendant Ethel L. Westcott, your verdict should be not guilty."

To this instruction defendants interposed an objection, "On the ground that the burden placed upon the defendant Ethel L. Westcott is greater than the law requires, and the interpolation by the court in the instruction tendered by the defendants, in instruction No. 18, of the words, 'and that during all of that time she knew that the officers and directors were fully advised of the taking of said commissions' has placed upon the said defendant a greater burden than the law requires for the acquittal of Ethel L. Westcott." Instruction No. 18 is related to given instruction No. 17, not objected to, and was in effect a logical continuance of the elements of knowledge as applied to defendant Westcott. Tendered and refused instruction No. 12, which deals with the same subject, was ambiguous and unintelligible, in that it stated in part, "and further that she, the said Ethel L. Westcott, knew that down to and including February 25, 1931, the date mentioned in the information in this cause, that the said Lewis had been receiving such commissions during all the time of his service as an officer of the association, or anyone else, that the said

Lewis was not entitled to such commission, * * *." For the purpose of clarifying this ambiguity the court interpolated the questioned phrase. The given instruction, taken and considered as a whole, was particularly favorable to defendant Westcott, and was in harmony with her testimony that, to her knowledge, the officers and directors were fully advised of the taking of the commissions involved, which testimony, because of its nature, was not subject to direct contradiction. Relative to the alleged greater burden placed upon Westcott, the jury were told in several instructions that if they found Lewis not guilty they must make a similar finding as to Westcott. The giving of this instruction was not prejudicial error.

Upon a consideration of all the instructions given we are of the opinion that the jury was fully and fairly advised on the issues, and, as before stated, instruction No. 18 was the only one to which any objections were made.

7. Error is assigned on alleged misconduct of the district attorney. This relates to some of his statements made during the trial and in argument to the jury. In every instance the court ruled that such statements were improper and the jury was cautioned and admonished to disregard them. Much of the objectionable argument was provoked by opposing counsel, and perhaps the most complained-of misconduct occurred in colloquy between counsel, which frequently leads to heated controversy. We do not approve of such conduct, but when, as in the present case, it is carefully controlled by the trial judge at the time of the occurrence, and where the jury is instructed immediately prior to the submission of the case, that the statements and arguments of counsel during the trial should not be considered by them in arriving at their verdict, we are convinced that no prejudicial error was committed which necessitates a reversal.

Other assignments of error advanced by counsel for defendants have been considered, but they are subsidi-

ary to those heretofore discussed, or are of such character as to call for no further comment.

We cannot agree with the assertion of counsel that irregularities were so numerous and the trial so unfair as to render a reversal of the judgment necessary. The record here discloses no such situation as was present in *White v. People,* 79 Colo. 261, 268, 245 Pac. 349, cited by counsel, and consequently that authority is not in point. Defendants were very ably represented by distinguished counsel, who were ever zealous to protect their clients' rights. We conclude by quoting from *Grandbouche v. People,* 104 Colo. 175, 190, 89 P. (2d) 577, as follows: "Human fallibility cannot be entirely eliminated in the administration of justice. The line of demarkation between mere fallibility and prejudicial error is a matter of degree, depending, in a measure, upon the circumstances in each case. The existence of the will to be fair and impartial on the part of those aiding in the administration of justice always should be present and be disclosed by the record. The existence of that fairness and impartiality is reflected in the record before us." A like reflection appears from the record in the *instant case.*

The judgment is affirmed.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE JACKSON not participating.