THE STATE v. GEORGE A. GOULD, Appellant.—46 S. W. (2d) 886.

Division Two, February 17, 1932.

*V. E. Phillips* and *R. T. Cooper* for appellant.

830

*Stratton Shartel,* Attorney-General, and *Ray Weightman,* Assistant Attorney-General, for respondent.

WESTHUES, C.—On May 9, 1930, the defendant, George A. Gould, and his son, Jay M. Gould, were jointly charged, in an indictment returned by the grand jurors of Jackson County, Missouri, with the crime of embezzlement as agents. The indictment was drawn under Section 4079, Revised Statutes 1929. Defendant, George A. Gould, was granted a severance. A trial of the case resulted in a conviction of defendant. The punishment assessed was four years' imprisonment in the penitentiary. A motion for a new trial was timely filed. The court overruled this motion and sentenced the defendant in accordance with the verdict. An appeal was taken to this court.

The facts, as revealed by the evidence, are about as follows:

George A. Gould was the owner of a real estate, loan and insurance business at Independence, Missouri, under the name of George A. Gould & Company. Jay M. Gould, a son and the co-indictee in this case, was the bookkeeper and prepared the deeds, notes, deeds of trust and other papers necessary for the transaction of the real estate and loan business. Jay M. Gould had a license to practice law, and in that capacity examined abstracts of title, when it became necessary in any of the company's business deals. A daughter of George A. Gould performed the stenographic work, and a son, Roy H. Gould, had charge of the insurance business. The company enjoyed the confidence of the public. The business transacted netted an income of approximately ten to twelve thousand dollars annually. The business was owned solely by the father, George A. Gould, from whom the children received stipulated salaries. The defendant, George A. Gould, had a private office. His main duties consisted of the outside work; such as soliciting business and showing prospective customers property the company had for sale or on which they desired to negotiate loans. A part of the company's business consisted of negotiating loans on real estate and of investing their clients' money in real estate securities. The business transaction that resulted in the present charge had its origin in March, 1927. Cora B. Smith, wife of George A. Smith, at the suggestion of a friend, went to the defendant's office for the purpose of investing eleven hundred dollars in real estate securities. The defendant obtained a note for the Smiths, secured by a deed of trust on real estate, signed by Fred A. Rice, for eleven hundred dollars and delivered it to Cora B. Smith in exchange for a draft of like amount. The interest on this investment was paid to the Smiths semi-annually, by the Gould

company. In December, 1928, the Rice property, on which the Smiths held a deed of trust to secure the eleven-hundred-dollar note, was sold by the Gould company for cash. The Smiths were notified, by the Gould company, that the property had been sold and that they held the eleven hundred dollars for them. In response to this notice, Cora B. Smith went to the office of the company and called on the defendant, George A. Gould. The defendant informed her that they had collected the eleven hundred dollars and at the same time suggested that he had some good property on which he could loan this money. Defendant showed Mrs. Smith various properties. In particular a house and lot owned by defendant's son, Max Gould. Defendant represented to Mrs. Smith that his son Max desired to borrow fifteen hundred dollars on this property, and that if she could obtain an additional four hundred dollars he could invest the fifteen hundred dollars in this property; that she would obtain a first deed of trust and note, signed by Max Gould and his wife. Mrs. Smith stated to the defendant that she would talk the matter over with her husband and if he agreed she would return with the additional four hundred dollars and make the investment. Mrs. Smith returned with a draft for four hundred dollars and delivered it to the defendant, George A. Gould. In return for this she received a note, purporting to have been signed by Max Gould and his wife. At the suggestion of defendant, the deed of trust and abstract were retained by the Gould company. Only the note was delivered to the Smiths.

In April, 1930, the Smiths learned that all was not well with the Gould company. Becoming alarmed over their investment, Mrs. Smith went to Independence, and, in company with an attorney, examined the records in the Recorder's office and found that the purported deed of trust, securing their note, had not been recorded. The facts disclosed at the trial, with reference to this, are as follows:

Max Gould owned the house and lot, which was pointed out to Mrs. Smith, by the defendant, as the property on which the Smiths were to have a first deed of trust. The correct description of this property was lot 76, Forbis Park, an addition to the city of Independence, Missouri. Jay M. Gould owned lot 75, Forbis Park Addition. This was an unimproved vacant lot. In the year 1922, the defendant, George A. Gould, secured for his son Max Gould, a loan of fifteen hundred dollars. Max Gould signed a note and a deed of trust conveying lot 76, above mentioned, as security for this loan. George A. Gould was the notary who took the acknowledgment to this deed of trust, and he testified that he handled the entire transaction. On May 29, 1929, five months after the deal with the Smiths was closed, the defendant, George A. Gould, negotiated a loan of eight hundred dollars for Max Gould. These eight hundred dollars were also secured by a deed of trust on lot 76, above mentioned. The deed of trust contained the following recitation:

"This deed of trust made subject to one first deed of trust for $1500.00 dated May 1, 1922, due five years after date, bearing interest at the rate of 6% per annum."

George A Gould, as notary, took his son's acknowledgment to this deed of trust and testified that he personally negotiated this loan. The note which the Smiths received was secured by an unrecorded deed of trust, covering lot 75, found in the vault of Gould & Company shortly after this trouble arose. The name of Max Gould and his wife, Lavetta Gould, had been forged to the note and deed of trust, leaving the Smiths without any valid paper securing their investment. Jay M. Gould, as above stated, owned lot 75.

Thus far the facts are practically undisputed. Cora B. Smith testified that all of her dealings with reference to the investment of the fifteen hundred dollars were with the defendant, George A. Gould. The defendant, on the other hand, testified that he handled the transaction up to the point where Mrs. Smith stated she had consulted her husband and that they, the Smiths, were going to invest their money in the Max Gould property, as suggested by the defendant; that then he, the defendant, turned the matter over to his son, Jay M. Gould, with instructions to complete the transaction as agreed upon, that is, to deliver to the Smiths a note and deed of trust, signed by Max Gould and his wife, covering lot 76, for fifteen hundred dollars and to pay off and satisfy of record the prior deed of trust for fifteen hundred dollars, dated May, 1922. This indebtedness, according to defendant, was past due and the holder of the note desired it to be paid. Defendant further testified that he did not learn that these instructions were not carried out until after his son absconded, and Cora B. Smith, in company with her attorney, came to his office, presented the note and informed him that the deed of trust had not been recorded.

The principal contention, made by defendant in his motion for a new trial and in his elaborate brief, filed by defendant's counsel, is, that the evidence does not sustain a conviction of embezzlement by agent as defined in Section 4079, Revised Statutes 1929. The defendant's contention is that if the proof shows any crime to have been committed by defendant, it is that of embezzlement by bailee or of obtaining money under false pretenses. Defendant states that "the State's evidence was all predicated on a criminal intent existing at the time of the transaction, which could not be embezzlement." The latter statement is particularly aimed at the four hundred dollars obtained from the Smiths in December, 1928. With reference to the eleven hundred dollars, collected from the sale of the Rice property, it is defendant's contention that he occupied the position of a bailee.

At common-law to constitute larceny it was held that there must have seen an unlawful taking of the property and if defendant ob-

tained possession of the property lawfully, and afterwards appropriated it to his own use and deprived the owner thereof, he could not be convicted of larceny. Morally the defendant would be as guilty in one case as in the other. To remedy this defect in the common law and to enable the State to meet out proper punishment for this class of wrong-doing, statutes were enacted, creating the crime of embezzlement and prescribing punishments therefor. See cases cited in 20 Corpus Juris 410, note 6; also page 412, note 15.

We will first dispose of the eleven-hundred-dollar item. As our statement of facts discloses, the defendant originally received the eleven hundred dollars in the year 1927, and gave the Smiths a note, signed by Rice and secured by Rice's property. In December, 1928, the Rice property was sold by Gould & Company, acting as real estate agent in the transaction. The eleven hundred dollars belonging to the Smiths, were paid to the defendant, and he, the defendant, so notified the Smiths. So far as the evidence discloses, defendant, under the circumstances, received this money lawfully, without any criminal intent to appropriate it to his own use. The question then remains, did defendant hold this money as agent for the Smiths or as bailee? The defendant acted as agent for Rice in the real estate deal. Defendant also acted as agent for the Smiths in the original transaction and invested eleven hundred dollars for them in the Rice property. Note the following testimony of Cora B. Smith:

"A. Well, I went to see Mr. Gould and he said he had this property he could loan the money on as the first mortgage and that was when Mr. Smith went down and looked at the property. Mr. Gould took us out himself and showed us the property and we talked it over and decided to let him loan the $1100 on this property.

"Q. For you? A. For Mr. Smith and I. And then in a day or so I took him down the note that you have just seen—" Defendant also collected the interest, on this investment, from Rice and paid it to the Smiths. Under these circumstances, the purchaser of the Rice property paid the eleven hundred dollars to the defendant, who was acting, at least, as an agent *de facto* for the Smiths. This act of agency was ratified by the Smiths when they received defendant's notification and commenced negotiating for another investment through defendant. According to defendant's own testimony he negotiated a deal whereby the Smiths were to invest fifteen hundred dollars in the defendant's son's property; defendant's son to give a note and deed of trust on his property as security. Can it be said that defendant did not act as the agent for both his son, Max, and the Smiths in making this deal? The defendant was the 'go between' acting as agent for both parties. The defendant's contention that he was a mere bailee is without merit. [State v. Adams, 300 S. W.

738.] Defendant acted as agent when he collected the eleven hundred dollars and he is now estopped to deny such agency. [State v. Perkins, 211 Pac. (Kan.) 139; State v. Lockie, 253 Pac. (Idaho) l. c. 620; State v. Gross, 110 N. E. (Ohio) 466; 20 C. J. 444 (34); Morse v. Comm., 129 Ky. 294, 111 S. W. 714; State v. Schilb, 60 S. W. (Mo.) l. c. 85.]

Defendant urgently insists that the four hundred dollar transaction cannot form a basis for embezzlement by agent, because Cora B. Smith testified that she received the forged note the same day the four hundred dollars were delivered to the defendant; and that, therefore, the criminal intent was present at the time the money was obtained. It will be noted, however, that according to defendant's own testimony, as well as that of the State, the deal was not closed until Mrs. Smith returned with the four hundred dollars and agreed to make the investment. The papers were then prepared, and although the forged note was delivered to Mrs. Smith the same day, the jury might have well found that defendant conceived the idea of defrauding the Smiths after he had received the four hundred dollars. But be that as it may, the defendant received the money as agent. Defendant did not pretend to sell the prosecuting witnesses a note owned by dedefendant, but he was negotiating a loan. The Smiths' money was to be paid to defendant's son, Max. Defendant now asks this court to reverse and set aside his conviction because he harbored a secret intention, at the time he received the money as agent, to appropriate it to his own use. Therefore, the offense was not embezzlement. Had the defendant been prosecuted for obtaining money under false pretenses, the defense would no doubt have been that the charge, if any, should be embezzlement. This court would then have been confronted with the same difficulty of trying to ascertain just at what point defendant conceived the evil intent to defraud. Where a defendant, by his own criminal acts, has placed himself in such a position that the evidence will support a conviction on either one of two theories, such as embezzlement by agent, or obtaining money by false pretenses, it should not be the duty of the court to draw fine, hair-splitting distinctions and ascertain just at what moment the criminal intent was formed. The embezzlement statutes were enacted to remedy a defect in the common-law. The courts should not, by strained constructions, add to the difficulties of the State in such prosecutions. The statute says:

"If any agent . . . shall embezzle or convert to his own use . . . he shall, upon conviction, be punished in the manner prescribed by law for stealing property of the kind or the value of the articles so embezzled."

We quote, from State v. Gross, 91 Ohio St. 161, 110 N. E. 466, an appropriate statement to the case at hand:

"The overwhelming weight of authority, common sense, and reason call for the application of the doctrine known as estoppel against the defendant. We too often lose sight of the primary purpose of criminal statutes. They are enacted to protect the public by prohibiting crime and punishing criminals. If a man is agent enough to get possession of money for and in the name of his principal, he is also agent enough to be convicted of embezzlement as such agent. Wharton, Bishop, and McLean all agree with this doctrine, and the same has been applied in principle in several Ohio cases."

This is supported by good authority. In 20 Corpus Juris 412, we read:

"It has been held, however, that where money has been voluntarily delivered to accused as agent, the fact that he formed the intent to appropriate it at or before the time he received it does not prevent a prosecution for embezzlement, although the offense may also constitute larceny."

See also cases cited under notes 12 and 13, page 412; Celli v. Sanderson, 207 S. W. (Tex.) 179. Wherein is the defendant prejudiced by such a doctrine? Morally the offense of larceny, embezzlement and  obtaining money under false pretenses stand on equal footing. Under our statute the punishment is specifically made the same for embezzlement as for larceny. The only distinction is the time the criminal intent is formed. Much of what has been said on this subject, herein, is *obiter dictum*. The evidence supports the charge as made. What has been said simply illustrates that the Legislature has not remedied all the difficulties the prosecuting officials have, in convicting embezzlers. Some states, recognizing these difficulties, have remedied the situation by merging larceny, embezzlement and obtaining money under false pretenses into one statute and denominating the offense as theft. [Sec. 484 and 490a, Penal Code of California 1931; People v. Stevenson, 284 Pac. 487.] This is indeed a common-sense statute. When the Supreme Law Giver delivered the Ten Commandments to Moses, on Mt. Sinaai, He embraced all offenses, wherein one person unjustly enriches himself at the expense of his neighbor, under the one simple commandment, 'Thou shalt not steal.'

As stated above, there is ample evidence in the record to support the charge. The court properly submitted the case to the jury in appropriate instructions. The various assignments of error, contained in the motion for a new trial, pertaining to the point in question, are ruled against the defendant.

Defendant contends that the court erred in admitting in evidence certain exhibits, which were the deeds of trust and notes showing the

various transactions, with reference to the original investment by the ▐ Smiths of eleven hundred dollars, and also with reference to the deal of fifteen hundred dollars. These various exhibits were necessary for a complete understanding of the charge against the defendant. Many of them were as favorable to defendant as to the State. Defendant introduced numerous exhibits with reference to these transactions. In fact, defendant introduced practically all that the State failed to introduce. There was no error committed by the trial court in admitting these exhibits.

Error is assigned because of the action of the trial court in excluding testimony, offered by the defendant; that defendant had made a general assignment for the benefit of his creditors and had caused ▐ his son, Max W. Gould, and wife, to execute a warranty deed, to the complaining witnesses, for lot 76, Forbis Park Addition. The record discloses the court permitted the defendant to show what had been done with reference to the warranty deed by Max W. Gould and wife. The record fails to show, however, that the deed was ever offered or tendered to the prosecuting witness. The general assignment for the benefit of creditors, which was made after defendant's business had collapsed and after he had been indicted, was properly rejected by the trial court. An offer of restitution is, under certain circumstances, competent evidence tending to negative criminal intent. But a general assignment for the benefit of creditors, after defendant has been indicted, sheds very little light on the question of the good faith of the defendant. The offer of proof of the assignment was properly rejected.

Defendant offered evidence tending to show that the customers of Gould & Company had confidence in the honesty and integrity of Jay M. Gould, defendant's son and bookkeeper, until the day he ▐ absconded and his misappropriation became known. This evidence was excluded, by the trial court, and this ruling is assigned as error. A sufficient answer to this contention is that defendant was not prosecuted for the malfeasance of his son. The son was not on trial and was not a witness in the case. The defendant, as the case was submitted to the jury, was tried for acts of misconduct, which he personally committed. Defendant contended that he was guilty of no wrongdoing; that his son, Jay M. Gould, was the guilty party. The court permitted defendant to fully present his evidence on this question to the jury, and the jury found against him. The point is ruled against defendant.

Defendant contends that the trial court of its own motion should have declared a mistrial because of improper cross--examination, by the State's attorney, of a character witness for the defendant. The

character witness, Thice, was an attorney at law and had represented the defendant at the time the indictment was returned against him and also represented defendant with reference to some legal matters that arose after defendant became involved in various business transactions. On cross-examination it was revealed that defendant had given this attorney, as a fee, a note and deed of trust represented to be a second deed of trust, but which later developed to be a third. Thereupon the attorney withdrew as counsel for defendant. No objection, whatever, was made to this cross-examination. Neither was there a motion to strike it out. Defendant cross-examined the witness with reference to the same subject and later in rebuttal gave some testimony on the matter. The point is first made in the motion for a new trial. This is too late. A defendant cannot sit idly by and permit incompetent testimony to be introduced and offer testimony on the same subject without any suggestion that it is incompetent, and then complain, after a verdict is rendered against him. The evidence was not of such a character that we can say that the trial court should have stricken it out of its own motion. Under such circumstances the objection has been waived. [State v. Matkins, 326 Mo. 1072, 34 S. W. (2d) 1; State v. Cain, 37 S. W. (2d) l. c. 418 (4).]

The defendant complains of improper remarks, by the prosecuting attorney, during his argument to the jury. The statements complained of are not preserved in the bill of exceptions. Therefore, there is nothing before us for review. [State v. Clark, 33 S. W. (2d) l. c. 891 (6); State v. Winslow, 11 S. W. (2d) 1010.]

We have carefully examined the record in this case and find that defendant was accorded a fair, impartial trial. A jury of his peers found him guilty. There was substantial testimony in the record of the guilt of the defendant. We are, therefore, not authorized to disturb the verdict of the jury.

The judgment of the circuit court is affirmed. *Cooley* and *Fitzsimmons, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.