65 So.2d 525

**ROGERS v. STATE.**

6 Div. 248.

Court of Appeals of Alabama.

Aug. 26, 1952.

Rehearing Denied Oct. 7, 1952.

Roderick Beddow, Jr., Beddow & Jones, and John A. Jenkins, all of Birmingham, for appellant.

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

**HARWOOD, Judge.**

This appellant was tried under an indictment containing two counts. The first count charged larceny, and the second count charged embezzlement.

The jury returned a verdict of guilty under the second, or embezzlement count.

 Prior to entering upon trial counsel for the appellant moved for a continuance on the ground that appellant was non compos mentis, and not capable of assisting or aiding her counsel in the preparation of her defense, thereby denying her a full hearing guaranteed by our State and federal Constitutions. Hearing was had upon this motion.

The evidence taken on the motion was in conflict, with the State's evidence being ample in its tendencies to support the court's ruling denying the motion for a continuance upon this ground. We see no basis justifying our interference with the lower court's conclusions in this matter, whose discretion in such matters cannot be disturbed in the absence of gross abuse. Wyatt v. State, 35 Ala.App. 147, 46 So.2d 837, certiorari denied 254 Ala. 74, 46 So.2d 847; Maund v. State, 254 Ala. 452, 48 So.2d 553.

It appears that on the morning following the above ruling, the Birmingham Post Herald, a newspaper of wide circulation in the city of Birmingham carried a story, the headlines of which read: "Mrs. Rogers Fails in Stalling Trial." The article also carried sub lines in the body thereof stating: "Doctors Say She's Sane," and

"Arrested Last Year." It also concluded with a paragraph that a private investigator had estimated that $75,000 was involved in the "alleged swindle."

On the morning of the appearance of this article counsel for appellant again moved for a continuance on the ground that numerous members of the venire had read the article and that appellant could not get a fair trial.

The court thereupon permitted defense counsel to propound questions to the venire. It was thus shown that some thirty of the venire had read the headlines of the story, and some twenty had read the entire article.

Defense counsel thereupon requested the members of the venire to hold up their hands if any of them would "consciously or unconsciously" be influenced in their duty in this case by what they had read. The record does not show that any of the veniremen responded to this request.

The court thereafter instructed the venire that the article should not have any influence on them whatever, that: "When you try the case, you try it on the evidence and according to the law as I give it to you, and nothing else should enter into consideration whatever."

The court overruled this second motion for a continuance. The court's action in this instance was in our opinion correct. Certainly there is nothing indicating any abuse of discretion in the matter.

In the trial below issue was joined on appellant's pleas of not guilty, and not guilty by reason of insanity.

The evidence presented by the State tended to show that Mrs. Holtzclaw first heard of Mrs. Rogers, the appellant, through a Mrs. Riley who had been an employee of Mrs. Holtzclaw for over twenty years.

On 6 December 1949, accompanied by Mrs. Riley, Mrs. Holtzclaw contacted the appellant in the lobby of the Watts Building in Birmingham. The appellant stated that the Alabama Gas Co., by whom she was employed, was going to issue some "call stock;" that this was an inside job and only employees of the company could buy the stock, and that money could be made on this "call stock" within fourteen days to the extent of $100 on every $1,000 of the stock purchased.

Mrs. Holtzclaw on this occasion turned over to appellant $750, and appellant stated she would buy some of the above mentioned stock with it.

On 8 December 1949, two days later, appellant telephoned Mrs. Holtzclaw and they again met in the lobby of the Watts Building and Mrs. Holtzclaw gave appellant $1500, and appellant stated she would purchase more "call stock" in the gas company with the money.

On 12 December 1949 Mrs. Holtzclaw gave appellant $3,000 for the same purpose.

Again on 15 December 1949 Mrs. Holtzclaw turned over to appellant $3500 for the purpose of purchasing more of the call stock.

On each of these occasions the appellant would give promissory notes in a sum equalling the amount of money turned over to her plus an additional amount figured at the rate of $100 on each $1000 or fraction thereof. These notes were payable respectively in from 12 to 5 days of execution.

No stock of any sort was ever received by Mrs. Holtzclaw, nor were any of the notes paid on their respective due dates.

When Mrs. Holtzclaw sought payment appellant made various excuses for the delay in payments and tried to reassure Mrs. Holtzclaw as to the bona fides of the transactions. Eventually Mrs. Holtzclaw turned the matter over to an attorney who succeeded in getting $4000 from appellant of the $8750 received from Mrs. Holtzclaw.

Over appellant's objections the State introduced some seven witnesses who testified to transactions with appellant substantially similar in pattern to those recounted by Mrs. Holtzclaw. These transactions were prior to Mrs. Holtzclaw's and were received in evidence to show a scheme, plan, or pattern on appellant's part.

The defense evidence was directed solely toward establishing the plea of insanity. In

this connection the testimony of several imminent experts in the field of mental and neurological diseases, as well as numerous lay witnesses, testified that appellant was insane at the time of these transactions.

In rebuttal to this testimony the State introduced the testimony of several imminent experts in the field of mental diseases, as well as numerous lay witnesses, whose testimony was to the effect that accused was sane. Some of the expert witnesses called by the State expressed the opinion that appellant was malingering.

We will not set forth the voluminous evidence presented by each side on this question of appellant's mental condition. Suffice to say that in view of the conflicting evidence on this matter a question of fact was presented solely within the province of the jury to resolve. Fitzhugh v. State, 35 Ala. App. 18, 43 So.2d 831, certiorari denied 253 Ala. 246, 43 So.2d 839.

██ In their argument and brief appellant's counsel contend that the verdict and judgment of guilty of embezzlement is contrary to the law, in that the State itself, by introducing witnesses to establish the plan, pattern, or scheme of appellant's operations preceding the transaction involved in this case thereby eliminated all reasonable doubt but that appellant intended to appropriate the monies prior to the time she obtained them. They further argue that the felonious intent existing prior to obtaining possession of the money, the acts of appellant cannot be considered as constituting embezzlement, though concededly such acts might constitute larceny or obtaining goods by false pretenses.

We do not consider that this argument is meritorious.

The crime of embezzlement is statutory. In some of its phases it overlaps with the offense of larceny and with the offense of false pretense. If however the elements essential to constitute embezzlement are present an accused is none the less guilty thereof even though the elements of other offenses are also present.

In Wall v. State, 2 Ala.App. 157, at page 173, 56 So. 57, at page 63, this court had before it the same point we are now considering, i. e., whether the preexistence of the felonious intent to convert property later obtained precludes a conviction for embezzlement. Writing to this question this court said:

"Defendant's counsel in their brief replying to the brief of the Attorney General only insist upon the correctness of charges numbered 12, 20, 25, 27, and 28, requested separately in writing by defendant, and refused by the court. These charges seem to have been asked upon the theory that an agent cannot be guilty of embezzlement of his principal's property if he has the secret, uncommunicated intent to convert it before he receives it, or before it comes into his * * * custody or keeping. Such is not the law. While it is true that, if one receives money with the fraudulent intent at the time of converting it to his own use, he may be, and probably is, guilty of a larceny, it is also the law that, if before or at the time of receiving the money the intent had been secretly formed to convert it by the party receiving it, he may nevertheless be guilty of embezzlement, if he afterwards unlawfully converts it to his own use. Having received the money as a duly authorized agent, the act of receiving is a lawful one, and his uncommunicated intentions, formed before or at the time, to convert it would not entitle defendant in this case to an acquittal of the charge of embezzlement, if he lawfully received the money as an agent, and then unlawfully converted it. If the defendant, while in the lawful possession of the money as agent, the care and custody of it being intrusted to him, fraudulently converts such money to his own use, he would be guilty of embezzlement within the meaning of the statute, notwithstanding the fact that he may have had a secret or uncommunicated intention of converting the money before he received it."

The following cases are in harmony with the above enunciated doctrine: State v. Gould, 329 Mo. 828, 46 S.W.2d 886; State v. Gross, 91 Ohio St. 161, 110 N.E. 466; Lewis v. People, 109 Colo. 89, 123 P.2d 398; State v. Tennant, 222 N.C. 277, 29 S.E.2d 552. See also 29 C.J.S., Embezzlement, § 4, page 673.

■■ Counsel for appellant further argue that the verdict and judgment of guilty of embezzlement is contrary to the law for the reason that in accepting a promissory note for the money Mrs. Holtzclaw thereby relinquished title thereto, and the relationship of debtor and creditor existed thereafter, rather than any relationship of a fiduciary nature which is essential to spell out embezzlement.

It is obvious from the evidence that Mrs. Holtzclaw turned her money over to this appellant temporarily for one specific purpose, and that was to buy "call stock." The jury was fully warranted in concluding that the giving of a note was nothing more than a trick or design to hide appellant's illegal design, and a mere incident in the broader fraudulent scheme. Under such circumstances it cannot properly be said that Mrs. Holtzclaw intended to, or did part with the title to her money.

We find the general rule to be that the fact that an accused has given a note or other contractual obligation which has been accepted by the injured party is no defense to a charge of either larceny or embezzlement, if the essential elements of the crime are present. See 70 A.L.R. p. 208 for annotation collecting authorities from numerous jurisdictions to this effect.

■ The term "agent" as used in our embezzlement statute, Sec. 126, Title 14, Code of Alabama 1940, as amended, is to be construed in its popular sense; meaning one who undertakes to transact some business, or to manage some affair, for another, by the authority and on account of the latter, and to render an account of it. 2 Bouvier Law Dictionary, Rawle's Third Revision page 2687; Hinderer v. State, 38 Ala. 415; Jackson v. State, 33 Ala.App. 42, 31 So.2d 514.

We think that under the facts presented there can be no serious question but that appellant was an agent under the terms of our embezzlement statute. Nor do we see that the relationship is altered because appellant was to buy the stock in her own name. This was but a part of the function appellant was to perform under the terms of the agreement between her and Mrs. Holtzclaw.

The record shows during the argument of counsel for appellant to the jury, the court sustained the State's objection to a portion of counsel's argument. What had been said by the defense counsel is not set forth in the record. A reasonable inference from the ensuing colloquy is however that defense counsel had made reference to the possible punishment that could be inflicted if she were convicted in all of the cases for which appellant was under indictment.

■ We cannot be certain of the soundness of such inference. However, points intended to be reviewed must be set out with reasonable certainty and in a manner as to inform the court with such clarity as to enable it to act without danger of mistake. Otherwise the matter complained of will be disregarded. Autry v. State, 34 Ala.App. 225, 38 So.2d 348.

■ The record further shows the following during the argument of defense counsel:

"Mr. Beddow: I will say this to you, gentlemen: There are seventeen other cases here just exactly like this, just exactly like it, and I tell you if in this one there is a conviction she can be given ten years.

"The Court: You are treading on dangerous grounds.

"Mr. Beddow: What do you mean?

"The Court: To argue those other cases.

"Mr. Beddow: I am arguing that there is evidence—

"The Court: I understand. We are trying only one case. You can argue the evidence as to the other crimes for

the purpose of showing the basis or the pattern of behavior; that was the purpose of introducing evidence in the other cases, but as far as what will take place in the other cases, why, that is not before this court and this jury at this time. Do I make myself plain?

"Mr. Deason: We move to exclude Mr. Beddow's argument.

"The Court: I do exclude it.

"Mr. Beddow: We except.

"The Court: I hope you won't make an issue of that, because everything has been going along so nice, I want it to continue to. I don't know whether the other cases will be tried. We will take that up at the proper time. We are trying this case now.

"Mr. Beddow: I want to except to the court's ruling.

"The Court: I will give you an exception.

"Mr. Beddow: I want to except to the court's statement ex mero motu, and I especially want to except to the court's statement, where the court referred to other crimes; there hasn't been any adjudication.

"The Court: I will take that back and say other alleged crimes, because that is the way I should have said it at first. If I said it the other way, I will take it back. Don't consider what I said with reference to other crimes—I mean other alleged offenses.

"Mr. Beddow: Is all of this wrangling going to be taken out of my time, Judge?

"The Court: Well, I think it will, Mr. Beddow, because you caused it.

"Mr. Beddow: Well, I didn't cause it with any deliberation,—

"The Court: Well,—

"Mr. Beddow: —and I except to the court's statement I caused it, because I was arguing something I thought was done in good faith.

"The Court: Well, go ahead; that is all right.

"Mr. Beddow: Yes, sir."

The effect of counsel's above argument was to indirectly again comment upon the possible punishment that might be inflicted upon appellant if she were tried upon the other indictments outstanding against her. Obviously such argument was beyond the issues of this case and therefore improper. The court was therefore justified in sustaining the State's objection to such argument, and in warning counsel that he was "treading on dangerous grounds" in pursuing it in light of the court's previous ruling that such argument was improper.

We do not find anything in the court's statements which under the circumstances, placed appellant's counsel in an unfavorable or unfair light before the jury, or that cast obloquy upon him. The court was in our opinion warranted in its actions and statements. Certainly we are clear to the conclusion that there is no basis for our concluding that appellant's substantial rights were probably injured by the above occurrences.

We have examined the refused charges requested by appellant in writing. All of the charges were in our opinion refused without error for the reason that they were either covered by the oral charge of the court, or other charges given at the request of the appellant, or were faulty because abstract under the verdict, or abstract under the evidence, or misstatements of applicable legal principles governing this case, or not predicated on the evidence, or argumentative.

It is our opinion that this record is free of error probably injurious to the substantial rights of this appellant, and is therefore due to be affirmed.

Affirmed.