[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 537 
The appellant was indicated and convicted of a violation of Section 177 (2) of Act No. 407 of the 1971 Regular Session of the Alabama Legislature (Title 28A, § 177 (2), Code of Alabama 1940, 1973 Cumulative Supplement, now Section 27-8-28, Code of Alabama 1975) involving the embezzlement of premiums or other funds by an insurance agent. On a four year sentence the appellant was ordered imprisoned for six months and granted probation for the remainder of his sentence.
In October of 1975 Robert C. Farnham met with Donald E. Luna in order to secure a six hundred thousand dollar loan with which to open the cardboard manufacturing firm of Sumter Industries, Inc. Luna was the vice-president of Business Insurance Consultants, Inc. The appellant was its president.
In order to secure the loan it was necessary that Farnham obtain life insurance. On December 23, 1975, Farnham gave a check for ten thousand dollars to Luna as a "deposit" or "binder for keyman mortgage insurance". Both the appellant and Luna executed a signed statement acknowledging receipt of the money and stating that
 "(i)f for any reason the mortgage applications and loans presently being handled . . . are not obtained to your satisfaction and the insurance applied for above not issued in a manner and rates acceptable to you, we agree to refund the money in full upon five (5) days' notice."
This ten thousand dollar check was deposited that same day to the account of Business Insurance Consultants giving this account a balance of $11,045.27. The appellant, Luna, and Charlotte L. Cox were the only persons authorized to sign on this account. Immediately the appellant took $6,500.00 of this total amount and deposited it to Mortgage Brokers of America, Inc. The appellant and Luna were the only two persons authorized to sign on this account. By December 31, 1975, a balance of $1,521.53 remained in the account of Business Insurance Consultants. *Page 538 
Farnham never received any insurance through the appellant, Luna, or Business Insurance Consultants. Though the appellant had submitted, as an agent, Farnham's application for life insurance to Kennesaw Life and Accident Insurance Company, on March 16, 1976, the company's file was closed because requested information had not been received. The file was never reopened.
On August 18, 1976, Farnham, through his attorney, formally demanded the return of his ten thousand dollars. The money was never returned.
In his defense the appellant testified that he received Farnham's check as an officer and not a licensed insurance agent of Business Insurance Consultants. He testified to his efforts to secure a policy of insurance and that these efforts continued through July 26, 1976. He maintained that he never received any notice of any type of the request for refund until after he had been indicted. The appellant testified that Farnham's ten thousand dollars was and always had been available for return upon request.
In rebuttal the State called Ronald Braswell who testified that during the summer of 1976 the appellant told him that "Farnham had asked for his money back and that . . . he felt like Farnham should be given his money back and that he would raise his five thousand dollars or his portion of the money provided Don Luna would raise his portion of the money and refund the money to Bob Farnham".
 I
Initially the appellant alleges that the State did not prove that he was acting as an agent in receiving the ten thousand dollars as charged in the indictment and as required by statute.
The indictment was framed in and tracked, as closely as possible, the language of Title 28A, Section 177, Code of Alabama 1940, 1973 Cumulative Supplement. That section reads:
 "(a) All premiums, return premiums or other funds belonging to others received by an agent in transactions under his license shall be trust funds so received by the licensee in a fiduciary capacity, and the licensee shall promptly account for and pay the same to the insurer, insured or other person entitled thereto.
 "(b) Any agent who, not being lawfully entitled thereto, diverts or appropriates such funds or any portion thereof to his own use, shall upon conviction be guilty of larceny by embezzlement and shall be punished as provided by law as if he had stolen such funds." (Emphasis added)
An "agent" is defined by statute:
 "(a) An agent is a natural person appointed and authorized by an insurer to solicit applications or to negotiate for insurance or annuity contracts on its behalf and, if authorized to do so by the insurer, to collect premiums in connection therewith.
 "(b) The term `agent' does not include any of the following:
 (1) Any regular salaried officer or employee of an insurer or agent who does not solicit or accept from the public applications for any such insurance or contracts;
 (2) A ticket-selling agent of a common carrier who sells accident insurance tickets to individuals; or
 (3) Any regular salaried officer or employee of an insurer who renders assistance to, or on behalf of, a licensed agent of the insurer, if such officer or employee devotes substantially all of his time to activities other than the solicitation of applications for insurance or annuity contracts and receives no commission or other compensation directly dependent upon the amount of business obtained."
 Title 28A, Section 156, Code of Alabama 1940, 1973 Cumulative Supplement (§ 27-8-1, Code of Alabama 1975).
The appellant maintains that the ten thousand dollar check was not a premium and that there is absolutely no evidence that he received any funds "in a transaction under his license".
Farnham testified that he never discussed business "as such" with the appellant and *Page 539 
that the ten thousand dollar check was "the down payment" for the three million dollar life insurance policy. The receipt signed by the appellant and Luna as president and vice-president of Business Insurance Consultants, Inc. concerned the "$10,000.00 binder for keyman mortgage insurance" and acknowledged receipt of a "deposit for $10,000.00". On cross examination Farnham testified that "this was just a deposit to be used as a premium" and stated that "(d)eposit, premium, it is the same thing".
On Farnham's application for insurance with Kennesaw Life and Accident Insurance Company the appellant signed his name in two places designated as "agent" and "name of agent". An underwriter for Kennesaw testified that the appellant was an agent for that company and that she received an application for insurance on Farnham signed by the appellant "as agent". She specifically testified that the appellant was "the agent in this case".
Although the appellant testified that he was not with Business Insurance Consultants as an insurance agent, he also stated that he "had to be an agent", and not a consultant, when he submitted Farnham's application to Kennesaw. He testified that he made the application as an agent.
The prosecution introduced the appellant's insurance license issued by the State of Alabama for the year of 1975 with Kennesaw Life and Accident Insurance Company. The license covered life and disability insurance.
Under these facts we have no difficulty in finding that the appellant was an "agent" and in receiving the ten thousand dollar check and submitting the application for life insurance he was acting "in transactions under his license".
Whether the ten thousand dollar check be considered a premium or deposit is immaterial. The check was received by an agent in a transaction under his license. The statute specifically covers "all premiums, return premiums or other funds belongingto others". Title 28, Section 177 (1).
The appellant further argues that "if he converted any funds it may have been as ordinary embezzlement, grand larceny or conceivably false pretenses but certainly not under this narrowly laid section of the Code". We do not agree. The statute was enacted to cover the very type situation presented here. Were it not for the appellant's agency and license, no application for insurance would have been submitted and no money would have been received. Under these circumstances the trial court properly denied the appellant's motion to exclude the State's evidence and request for the affirmative charge.
 II
In urging this Court to reverse his conviction the appellant also maintains that, since there was no evidence of a conspiracy between himself and Luna, evidence should not have been admitted against him under any theory of a conspiracy.
Though circumstantial, substantial evidence of a conspiracy exists. The appellant was president and Luna was vice-president of Business Insurance Consultants, Inc. Both signed a receipt for the ten thousand dollars and acknowledged that this amount would be returned within five days after request if the insurance was not obtained. Farnham handed the check to Luna. The very day the check was received it was deposited into the account of Business Insurance Consultants. A portion of that amount was then withdrawn by the appellant and deposited into the account of Mortgage Brokers of America, Inc. The appellant and Luna were the only persons authorized to sign on this account. In the summer of 1976 the appellant made the statement that he knew Farnham had asked for the return of his ten thousand dollars and he would raise "his five thousand dollars or his portion of the money" if Luna would raise his. No insurance was ever obtained and, after demand, the ten thousand dollars was never returned.
These circumstances support a finding that the appellant and Luna were co-conspirators in the same crime even *Page 540 
though Luna, not being a licensed insurance agent, could not be convicted of the substantive crime charged against the appellant. One who is incapable of committing the offense which is the object of the conspiracy may still be criminally liable for the conspiracy to commit it. Jollit v. United States, 285 F. 209 (5th Cir. 1923); Jones v. State, 31 Ala. App. 504,19 So.2d 81 (1944); 15A C.J.S. Conspiracy § 73b.
 "In order that the fact of a conspiracy may be established, it need not be proved by evidence of an express agreement or compact between the alleged conspirators, or by any direct evidence of any agreement or compact. It may be proved inferentially, or by circumstantial evidence. Conspiracies from their very nature are usually entered into in secret, and are consequently difficult to be reached by positive testimony, which renders it peculiarly necessary and proper to permit them to be inferred from the circumstances." (Citations omitted) Conley v. State, 354 So.2d 1172, 1177 (Ala.Cr.App. 1977).
The evidence presented affords a legal and permissible inference of the existence of a conspiracy between the appellant and Luna. Stowers v. State, 21 Ala. App. 501,109 So. 561 (1926).
 III
While the trial judge stated that he had "let in some evidence which in (his) mind was admissible by reason of co-conspiratorship", the only instance cited on appeal is the admission of the letter demanding the return of the ten thousand dollars.
The letter was jointly addressed to the appellant and Luna. It was written by Farnham's attorney and sent by registered mail. The return receipt was not signed by either the appellant or Luna. Defense counsel stipulated that the letter "is part of the records of B.I.C." but objected to its admission on the ground that the appellant never received the letter.
Clearly this letter was not admissible as a business record under Rule 44, Alabama Rules of Civil Procedure. This letter was not a "writing or record, . . ., made as a memorandum or record of any act, transaction, occurrence, or event, . . ., made in the regular course of any business, . . ., and it was the regular course of the business, . . ., to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter".
However "(p)roof that a person possessed a writing usually warrants a finding or presumption that he knew the contents of such document". C. Gamble, McElroy's Alabama Evidence § 64.01 (3rd ed. 1977). "The possession of a document is an important and often the only circumstance to show that its possessor has by reading it become aware of its contents." II Wigmore, Evidence §§ 245, 260 (3rd ed. 1940). Additionally Wigmore states that "The existence of a document in the house or among the goods of A may be offered as evidence that A has had possession of it, or has otherwise dealt with it". I Wigmore, § 157 (3). A letter written to the accused and found in his possession may be admissible against him where there is proof of some facts tending to connect him with the letter. 23 C.J.S. Criminal Law § 850.
In this case proof of actual receipt of the letter by the appellant was not required because there was evidence that a conspiracy existed between the appellant and Luna concerning the subject of the letter. It was stipulated that the letter was in fact a business record of Business Insurance Consultants. Luna's knowledge of the letter and its contents was established by the testimony of the appellant himself.
 "A. I knew that the man wanted his money back. Mr. Luna told me about the letter and that that letter had been answered and a response to that was coming.
 "THE COURT: Wait a minute now. What letter are we talking about.
 "A. The letter that has been admitted. I was told about the letter at a later date.
"THE COURT: State's Exhibit 15?
"A. I had never seen the letter as such. *Page 541 
"Q. You say you have never seen the letter?
"A. No, sir."
The appellant testified that he first became aware of the letter after his indictment in November of 1976.
Since there is evidence from which it can be legally inferred that the complete conspiracy embraced not only the initial embezzlement or the unlawful obtaining of the ten thousand dollars but also the retention of the money after demand for its return was made, the conspiracy was a continuing one and Luna's receipt and knowledge of the letter would be attributable to the appellant. It is permissible to allow statements of one co-conspirator to be received against another until the common purpose of the joint criminal venture has been accomplished. Cooper v. State, 43 Ala. App. 385, 389,191 So.2d 224, cert. denied, 280 Ala. 711, 191 So.2d 229 (1966). Where proof of a conspiracy exists, any act or statement by an accused's co-conspirator in the commission of the crime, done or made before the commission of the crime, during the existence of the conspiracy and in furtherance of a plan or design, is admissible against the accused. Conley v. State,354 So.2d 1172, 1178 (Ala.Cr.App. 1977). As long as a conspiracy exists, acts by co-conspirators in furtherance of a plan or design are admissible in evidence against the accused co-conspirator. Svirbely v. State, 53 Ala. App. 452, 455,301 So.2d 219 (1974); see also Dailey v. State, 233 Ala. 384,171 So. 729 (1937); Scott v. State, 30 Ala. 503 (1857); Bynum v.State, 348 So.2d 804 (Ala.Cr.App.), cert. quashed,348 So.2d 828 (Ala. 1976).
Luna's knowledge and receipt of the letter would be attributable to the appellant since the conspiracy was still continuing and in existence even though the appellant never actually received or read the letter. People v. Halpin,276 Ill. 363, 114 N.E. 932 (1916).
 IV
The appellant objected to the trial judge's oral charge to the jury on intent and repayment. The judge charged:
 "Now, ladies and gentlemen, there must be in this case, as in every case under this statute in my judgment, there must be more than a mere failure to account for and pay the money. There must be evidence of fraudulent appropriation or disposition.
 "To state it another way, there must be evidence indicating an intention to divert or to appropriate the funds or a portion of the funds to the defendant's own use or to secrete it or for him to hide it or secrete it with an intention to so convert it. And that is the law as I understand the law.
 "I further charge you that the demand for repayment is not a condition precedent to a showing of a diversion, or we will use this phrase is not a condition to a diversion or appropriation of the funds. And when I say a condition precedent, I will tell you that it is not necessary that there be a demand for repayment and the fact that a demand for repayment was not made is not a defense in this case.
 "And the fact, if it be a fact, that the funds were available or being held by the defendant or offered to be paid by the defendant is not a defense to this case.
 "The evidence as to repayment or holding the money, or what have you, is into this case and that is a ruling which the Court is called upon to make. It is admissible in this case to show or not to show an intention to divert or appropriate the funds and it is to be considered by you in connection with all the other evidence in this case."
This charge was proper.
The gravamen of the offense of embezzlement is that a person who has come rightfully into the possession of personal property by virtue of some trust, duty, agency or employment fraudulently converts it to his own use or fraudulently secretes it with the intent to convert it to his own use or to the use of another. Rogers v. State, 259 Ala. 124, 125,65 So.2d 531 (1953). *Page 542 
It is no defense to a charge of embezzlement by an agent that after the offense was completed the agent promised to pay the money converted. Cephus v. State, 16 Ala. App. 499, 79 So. 197
(1918); Rogers v. State, 37 Ala. App. 8, 65 So.2d 525, cert. denied, 259 Ala. 124, 65 So.2d 531 (1953). A person taking money entrusted to him and using it even temporarily for his own benefit cannot avoid criminal responsibility by calling it a loan. Evans v. State, 343 So.2d 557 (Ala.Cr.App. 1977). Even the fact that the funds have been repaid constitutes no defense. Troup v. State, 32 Ala. App. 309, 26 So.2d 611 (1946);Wall v. State, 2 Ala. App. 157, 56 So. 57 (1911). "Demand for return is no condition precedent to showing embezzlement. . . ." Adams v. State, 43 Ala. App. 281, 286, 189 So.2d 354, cert. denied, 280 Ala. 707, 191 So.2d 372 (1966). "The intention of accused to restore the money or other property embezzled will not relieve the act of its criminal nature; and this is so, even though accused has sufficient property to make restoration." 29A C.J.S. Embezzlement § 12c.
We have searched the record for error and finding none affirm the judgment of conviction.
AFFIRMED.
All the Judges concur.