CLARK, Retired Circuit Judge.
At the time of the indictment and the trial of appellant, he was a member of the County Commission of Russell County, Alabama. Omitting the formal parts thereof, the indictment was as follows:
“Howard Lake as a Commissioner of Russell County, Alabama, being thereby charged or entrusted with the collection, receipt, safekeeping, transfer or disbursement of certain property, to-wit: 4,968 gallons of liquid asphalt of the value of to-wit: $1639.44; 113.8 tons of No. 6 stone of the value of to-wit: $472.27; and 68.3 tons of No. 7 stone of the value of to-wit: $334.67, said property belonging to or under the control of the County of Russell, Alabama, did convert to his own use or to the use of another the said above-described property contrary to law and in violation of Section 13-3-21, Code of Alabama 1975.”
A jury found defendant guilty as charged in the indictment. The court sentenced him to imprisonment for two and one-half years and placed him on probation for the same length of time.
The paramount and stoutly contested issue on appeal is as to the sufficiency vel non of the evidence to support the verdict. Our summary of the evidence will be limited to that part of it that has a material bearing upon the crucial issue in the case.
It was conclusively established by the evidence for the State that during the summer of 1977 Commissioner Lake ordered the paving of four roads or streets at Lakeview Mobile Home Court. In accordance with the order of Commissioner Lake, the roads or streets were paved by employees and supervisory personnel of Russell County. The Russell County Commission paid all of the salaries, and the gas, oil and diesel fuel used by its equipment in the particular paving project. It also paid for the liquid asphalt and stone used in the paving process as set forth in the indictment. Lake-view Mobile Home Court was owned by Douglas Lake, an uncle of defendant, but some of the lots at Lakeview Mobile Home Court had been sold to other people.
Mack Hornsby had an oral agreement with Douglas Lake, whereby he rented “from Mr. Douglas Lake for a certain figure, and then I turned around and then I rented spaces to the public to park their mobile homes there for another figure which I tried to make a profit at.” According to his testimony he had had such an arrangement with Mr. Douglas Lake for “several years.”
Introduced in evidence in the case was a typed agreement of July 21,1977, signed by Mack Hornsby and Howard Lake, as follows:
“This Agreement made and entered into this 21st day of July 1977, by and between Mack Hornsby, party of the first part and the Russell County Commission, party of the second part;
“WHEREAS, Mack Hornsby, party of the first part desires that the Russell County Commission, party of the second part perform certain work on the streets in Lake-view Trailor Court.
“THEREFORE, the Russell County Commission, party of the second part agrees to pave said streets (total length approxi *341 mately 2,700 feet) with double bituminous surface treatment.
“Mack Hornsby, party of the first part agrees to reimburse Russell County Commission, party of the second part for actual cost of all materials used on said project. (Estimated cost $2700.00).
“IN WITNESS WHEREOF, on this the 21st day of July 1977, we affix our signatures to this AGREEMENT.”
The indictment was returned on March 28, 1979. About a week thereafter, an employee of the County Clerk’s office found the agreement stated above in a file folder. She testified that prior to the indictment she had looked through the office and had not found any agreement or anything in the minutes to indicate approval of the paving project by the County Commission. She could not explain why the agreement was in the particular file; she stated she didn’t think she put it there. The evidence also shows that copy of the document had been filed and kept in chronological order in the office of the County Engineer.
Commissioner Lake testified he had obtained the approval of the other four commissioners to the paving of the property. According to the testimony of each of the other commissioners, the paving had not been authorized by him (her), the matter had never come “across the table” at any conference or meeting of the Commission. Some of them would not say that Commissioner Lake had not at some time discussed the matter, but there was no specific recollection thereof.
Soon after the contract executed by Commissioner Lake and Mr. Hornsby was found, the Clerk of the County sent Mr. Hornsby a statement for $2,700.00, the estimated cost of the material furnished, which Mr. Horns-by promptly paid.
At the conclusion of the evidence for the State and upon consideration of defendant’s motion to exclude the evidence, the court announced that it would hold as a matter of law that three of the streets or roads that were paved were public roads or streets and that there could be no conviction under the indictment for the conversion of alleged material belonging to the county that was applied on public streets or roads. The court stated that it would instruct the jury “that as a matter of law the top and bottom streets and the Kinnett Road are public ways,” which the court did in charging the jury after the completion of the case. During the colloquy among the court and counsel, it was made clear that there was enough material of the county used on the street or road that the court did not as a matter of law determine was a public street or road to constitute much more in value than $25.00, which would make the crime charged a felony rather than a misdemean- or.
The announcement of its conclusions by the court narrowed the issue between the parties to one that hinged largely upon whether the only remaining street or road was a public way on the one hand or a private one on the other. There is no contention by appellee, and we can see no reasonable basis for such contention, that if such street was a public street or, stated otherwise, if there is no substantial evidence to support a finding that it was a private street, the verdict and judgment finding defendant guilty cannot stand in the face of defendant’s denied motion to exclude the evidence, his refused requested general charge in his favor and the denial of his motion for a new trial.
Much of the evidence was devoted to the nature of all of the four roads or streets that were paved, but as three of them were eliminated by the court as a basis for the charge contained in the indictment, a large part of such evidence has no material bearing upon the pivotal question of the nature of the remaining street, which appellant now insists, as he did on the trial, was a public way at the time it was paved.
“A public way is established in either one of three ways, (1) by a regular proceeding for that purpose, or (2) by a dedication as such by the owner of the land the way crosses, with acceptance by the proper authorities, or (3) the way is generally used by the public for twenty years. *342 “Jones v. City of Birmingham, 284 Ala. 276, 224 So.2d 632.” Powell v. Hopkins, 288 Ala. 466, 472, 262 So.2d 289, 294 (1972).
On June 24, 1968, there was filed on behalf of the owner of the property, Mr. Douglas Lake, in the office of the Probate Court of Russell County a plat of a subdivision of the property. A photocopy thereof is in the record as Defendant’s Exhibit No. 1. In it three streets are shown and designated as “A” street, “B” street, and “C” street, each fifty feet in width. It appears that “A” supplants what has been referred to herein as Kinnett Road, a longitudinal street on one side of the plat. There is no road or street on the other side. The plat is in the shape of a rectangle approximately 816 feet long and 600 feet wide. On one end of the rectangle, the surveyor has drawn five lots, four of which are each 100 feet in width and 178 feet long. The other lot is 200 feet in width and 178 feet in length, but such lot is “not in this survey.” The lots in this end of the plat are shown to be in “BLOCK ‘A.’” “‘B’ Street,” fifty feet in width, is shown as adjacent to Block A. The part of the property adjacent B Street on the other side of Block A is designated “FUTURE DEVELOPMENT BLOCK ‘B,’ ” which is shown to be 360.4 feet in width and extends to a 50-foot street designated as “ ‘C’ STREET”; then adjacent to “C” Street are shown six lots 178 feet in length and 100-109 feet in width and designated as “BLOCK ‘C.’ ”
On copy of the plat, Defendant’s Exhibit No. 1, there now appears a freehand drawing of two transverse lines running the full width of the plat, one just above and the other just below the designation on the plat, “FUTURE DEVELOPMENT BLOCK ‘B.’ ” These two lines were made on the exhibit by one of the witnesses in an effort to show the location of the street that the court did not rule as a matter of law constituted a public way, which in the record, is often referred to as the “third street.” The term “third street” tends to confuse, as four streets in all were involved. Meant by “third” was that it was one (the middle) of three transverse streets on the plat. As the designation was apparently accepted by all concerned, we will continue herein to designate it as “third.” Upon request of one of the attorneys, as to which there was no objection, the witness has placed within the mentioned transverse lines a legend, “3rd St.”
There was evidence that Kinnett Road had existed and been used by the public generally since 1953. Two of the transverse roads on the plat, not the “third street,” came into existence between 1962 and 1967. There was some maintenance by the county of all of the roads, except the “third street,” for at least twelve years prior to the trial. There had been some maintenance by the county of the “third street” prior to paving thereof in 1977, which according to the evidence was less than “twelve years,” but the period of time was not made certain. The maintenance was described as “blading” the road or running the motor grader over it and cutting it half an inch or an inch, “just enough to cut out the rough and fill in the holes and get it to where people can travel it.” Mr. W. L. Griffith, foreman for District One, whose immediate supervisor was the defendant and who testified as to the paving work that was done as ordered by defendant, said as to his knowledge of “third street” in pertinent part:
“Q. [On cross examination by defendant’s counsel] Let me ask you just one question, Mr. Griffith. Was the Third Street newly created at the time it was paved or had it been in existence as a dirt street for a while before it was paved?
“A. When I first remember this Third Street, as I recalled it, there was a line of trailers facing each one of the existing streets that’s on this plat, and the people used that thing as a driveway for trailers going — they could have a back entrance and a front entrance.
“Q. I see.
“A. Now, when this street was put in there, I don’t recall.
“Q. I see. So the various people who lived there were using it more or less as a trail before it became a street?
*343 “A. A trail?
“Q. Yes, sir.
“A. Well, call it a trail, if you like, or a driveway.”
Recognizing that “third street” had not been established by procedure (1), i. e., by a regular proceeding for that purpose or by stated way (3), i. e., by use by the general public for twenty years, as set forth in Powell v. Hopkins, supra, appellant relies upon specified method (2), that is, by a dedication of the way by the owner of the land with an acceptance thereof by the proper authorities. He does not attempt to show that the recordation of the plat by Mr. Douglas Lake in the office of the Probate Court constituted a dedication, as the plat itself shows affirmatively that there was no “third street” therein, and that afterwards what was referred to as “third street” was midway of a large part of the land that was expressly reserved in the plat and designated as “FUTURE DEVELOPMENT ‘B.’” Appellant urges that, although there may have been no express dedication, there was a common law or “implied” dedication to be found in whatever action there was by the owner conjoined with whatever action there was by the county. As to any action by the owner, there is little, if any, evidence. He himself did not testify. As to any action by the county, appellant is obliged to rely exclusively on the rather nebulous testimony as to some blading at times of the street or “running over it knocking the lumps out of it.”
We find no evidence in the case that would justify any ruling that as a matter of law there had been a common law dedication of “third street.” No affirmative action to that end is shown on the part of the owner. Whatever the county did in the way of “blading” was inconclusive as to any intent on the part of the county to assume responsibility for the maintenance of the road or to treat it as a public way.
“The intent to dedicate to public use is the foundation of every dedication. And the burden of proving a dedication rests upon the party asserting it. State ex rel. Davis v. Meaher, 213 Ala. 466, 484, 105 So. 562; Burleson v. Town of Hamilton, 213 Ala. 198, 200, 104 So. 253; Smith v. City of Dothan, 211 Ala. 338, 340, 100 So. 501. ‘Dedication is an affirmative act, and must be shown by affirmative evidence or its equivalent. If the acts and declarations of the owner are equivocal, they are insufficient to establish a dedication. * * * [t]he intent to dedicate to the public use must be shown by unequivocal acts upon which the public has a right to rely.’ Burleson v. Town of Hamilton, supra [213 Ala. 198, 104 So. 254]. In Smith v. City of Dothan, supra [211 Ala. 338, 100 So. 502], the rule was recognized ‘that to establish a dedication the clearest intention on the part of the owner to that effect must be shown, and that the evidence must be clear and cogent and the acts of the owner relied on to establish a dedication must be unequivocal in their indication of the owner’s intention to create a public right exclusive of his own.’ ” Witherall v. Strane, 265 Ala. 218, 222-223, 90 So.2d 251, 255.
To the same effect are O’Rorke v. City of Homewood, 286 Ala. 99, 237 So.2d 487 (1970); Howard College v. McNabb, 288 Ala. 564, 263 So.2d 664 (1972).
We doubt that there is any evidence in the case that would support a finding that “third street” was a public way, but we are not required to make this determination, as the trial court did not hold that as a matter of law it was a private way. It left that inquiry as a' question of fact for the jury to decide. As to this, appellant has no ground for complaint. The ruling of the trial court to the effect that the decisive question as to whether the way was public or private was a factual one was as much as if not more than, that to which defendant was entitled. Although when all evidence bearing on the question is presented, such question often becomes one for the court to decide as a matter of law, it may under the circumstances in a particular case be one as to which reasonable people could reasonably draw contrary conclusions. Thus it was held by Mr. Justice McKenna in District of Columbia v. Robinson, 180 U.S. 92, 96, 21 S.Ct. 283, 284, 45 L.Ed. 440 (1901):
*344 “There is an assignment of error which in effect, though in form an attack on instructions, questions the sufficiency of the evidence to justify any recovery, and which asserts that it was the duty of the court to have taken the case from the jury. In other words, it is claimed that the trial court should have decided, and not left it to the jury to decide, that the road was a public highway. It is not clear upon what the contention is rested; whether it is rested on the ground that the road was established by the levy court, or that evidence showed beyond reasonable dispute that the road had been acquired by adverse use, or had been dedicated by plaintiffs’ predecessors in the title. But the evidence did not establish either conclusion beyond reasonable dispute. Both conclusions were disputable and disputed, and whether they were or were not justifiable inferences from the evidence, which was conflicting, was for the jury to determine, not for the court; and the court properly declined to do so. What were within the functions of the court, and what were within the functions of the jury, are questions entirely aside from the distinction between public and private ways and the manner of acquiring either, — whether by grants or by acts in pais establishing title by dedication or prescription, the propositions which counsel have learnedly argued. “There is no evidence of a formal grant. The dedication of the road, or the prescriptive right of the public to it, was sought to be proved by the acts of the owners of the land and certain uses by the public. There was opposing evidence, or, rather, evidence of opposing tendency, which could be claimed to show that the use by the public was in subordination to the title, — was permissive, not adverse. The issue hence arising was properly submitted to the jury.”
In our opinion, the evidence as a whole, including all documentary evidence in the record and the testimony of all witnesses, was sufficient to justify a finding by the jury that the street referred to in the testimony as “third street” and on Defendant’s Exhibit 1 as “3rd St.” was not a public way. Although this conclusion is completely independent thereof, we note additionally that by agreement of parties in open court the jury was allowed to inspect as a body the locus in quo during the trial. The record shows:
“THE COURT: Ladies and Gentlemen, both sides of this case have agreed to allow you to view the roads that we are talking about for the proposition that it would help get yourselves oriented to the lay of the land and exactly what these witnesses have been discussing.

“With that, the court proceedings in this courtroom will be in recess until 1:30, at which time the jury will view the site and go to lunch.
“At 10:15 A.M. recess was had for the jury to view the property under discussion and also to have lunch.”
The court reconvened at 1:37 P.M., and the court said:
“THE COURT: Ladies and Gentlemen, when we recessed to view the scene, and we are now back, the State is still presenting witnesses in the case in chief.”
As neither party has raised the question and as a decision thereof is not necessary to a correct determination of this appeal, we do not attempt to decide whether the inspection by the jury of the locus in quo adds strength to the basis for its verdict. See Western Ry. of Alabama v. Still, Ala., 352 So.2d 1092 (1977); Pappas v. Alabama Power Co., 270 Ala. 472, 119 So.2d 899 (1960); State v. Carter, 267 Ala. 347, 101 So.2d 550 (1958). Certainly the facts shown do not weaken the verdict of the jury.
We are well impressed by the strong argument of counsel for appellant to the effect that the evidence is not so strong as to compel a conclusion that defendant intentionally acted in such a way as to “convert to his own use or to the use of another” liquid asphalt and stone as alleged in the indictment, which by Code 1975, § 13— 3-21 is denominated “embezzlement.” On his side of that argument is undisputed *345 evidence that he did not know that his uncle was the owner of the property, and there was no positive testimony that defendant knew that “third street” was not a public way. On the other side of the argument, however, are the rather mysterious circumstances of an important contract executed by Commissioner Lake and Mack Hornsby of which no other commissioner of Russell County had any knowledge until nearly two years after the work on the contract was performed, the further fact that the sizeable and important work was performed on the order of Commissioner Lake without its ever being considered at a meeting of the County Commission and that no reference to it was ever found in the minutes of such meetings. Felonious intent, as distinguished from mere negligence, on the part of Commissioner Lake was a question for determination by the jury.
Appellant argues that the acceptance by Russell County of a check from Mr. Mack Hornsby for the amount agreed upon by the contract executed by him and Commissioner Lake, with knowledge of all the previous circumstances, constituted a ratification by the interested party, Russell County, of the conduct of Commissioner Lake. Appellant’s reliance upon Wilkinson v. Moseley, 30 Ala. 562 (1857), is misplaced. There the tort of conversion, a civil wrong, was involved; here there was a prosecution for the crime of conversion or embezzlement. As to the one, an accord and satisfaction constitutes a valid affirmative defense. As to the other, it is not a defense. Rogers v. State, 37 Ala.App. 8, 65 So.2d 525, cert. denied 259 Ala. 124, 65 So.2d 531 (1953); Troup v. State, 32 Ala.App. 309, 26 So.2d 611 (1946); 26 Am.Jur.2d, Embezzlement, § 47.
We find no error in the record prejudicial to defendant, and we conclude that the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this- Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.